# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-23-00018-CV

**Shakeel Mustafa, Appellant**

**v.**

**Pakiza Asim, Appellee**

### FROM THE COUNTY COURT AT LAW NO. 1 OF WILLIAMSON COUNTY
### NO. 11-0061-FC1, THE HONORABLE THOMAS O. STANSBURY, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Appellant Shakeel Mustafa challenges the trial court's judgment denying his petition to modify custody and child support for his minor child. Because the evidence of the awarded attorney's fees was legally insufficient, we reverse and remand in part. We affirm the remainder of the trial court's judgment.

## BACKGROUND

Mustafa and appellee Pakiza Asim were married and have two children together. One of their children is now an adult, and the other is a minor. Mustafa and Asim divorced in California and then moved to Texas. The custody arrangement was joint managing conservatorship. In 2017, after a jury trial, custody was modified to appoint Asim as sole managing conservator with Mustafa having a possessory right but only under "continuous professional supervision."

Over the following five years, Mustafa lived in Pakistan. On November 9, 2020, Mustafa filed his original petition to modify the parent-child relationship. He later filed an amended petition to modify. Mustafa requested that the trial court: modify the possession order to give him and Asim rights of possession "in accordance with the terms and conditions of a standard possession order;" modify virtual access by ordering "reasonable periods of electronic communication with the children to supplement his periods of possession of the children;" and modify child support "to substantially conform to the guidelines."

On November 8, 2021, Mustafa filed an objection to the first visiting judge assigned to this case. In December 2021, Senior Judge Thomas Stansbury became the second visiting judge and signed two orders in the case—one to substitute counsel and one for a continuance. Neither party objected to Judge Stansbury's assignment to the case during the pre-trial and trial hearings.

At trial, Mustafa testified as the sole witness in support of his modification requests. In support of his request to modify child support, Mustafa testified that his monthly income was 175,000 Pakistani Rupees per month, which he testified converted to either $1,000 or $865.[1] As relevant to Mustafa's appellate issues, Asim called Mike Adams, who had worked as a private investigator for Mustafa, and called her appellate attorney to testify as an expert witness regarding attorney's fees.

---

[1] Mustafa also testified regarding his possession and access requests, but we do not include the details of that testimony because Mustafa does not challenge the trial court's determination regarding those two modification requests in this appeal.

On October 14, 2022, the trial court signed the final order, which denied Mustafa's requested possessory and child-support modifications but ordered that Mustafa "may communicate electronically" with his minor child for five minutes a week, with limitations.[2]

On November 2, 2022, Mustafa requested that the trial court state its findings of fact and conclusions of law. Mustafa filed a motion for new trial on November 23, 2022. The trial court held a hearing on the motion for new trial and denied it by order on December 19, 2022. Mustafa appealed on January 12, 2023.

On Mustafa's motion, this appeal was abated and remanded to the trial court for the issuance of findings of fact and conclusions of law. The trial court sent written findings of fact and conclusions of law on May 19, 2023. Judge Stansbury was reassigned to this case on July 26, 2023. On Mustafa's motion for reconsideration of the trial court's findings of fact and conclusions of law, the trial court entered amended findings and conclusions on July 28, 2023, which included the trial court's finding that Mustafa had not shown a material and substantial change of circumstances to justify modification of the possession or child-support order and its conclusion that Mustafa provided "insufficient evidence to prove by a preponderance of the evidence that the child support award under the previous order differs by either 20 percent or $100 from the amount that would be awarded in accordance with the child support guidelines." Mustafa objected to Judge Stansbury's assignment as visiting judge on July 31, 2023. Judge Stansbury declined to recuse. This appeal was reinstated on August 2, 2023.

Mustafa was represented by counsel during trial. He is proceeding pro se in this appeal.

---

[2] Mustafa does not challenge the trial court's ordered limitations to the granted virtual access.

3

## LEGAL STANDARDS

### Procedural Rules

The Rules of Appellate Procedure require that an appellant's brief "must contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record." *See* Tex. R. App. P. 38.1(i). We construe the Rules of Appellate Procedure both reasonably and liberally. *See Republic Underwriters Ins. v. Mex-Tex., Inc.*, 150 S.W.3d 423, 427 (Tex. 2004). However, to prevent unfair advantage over litigants represented by counsel, pro se litigants are held to the same standards as licensed attorneys and are required to comply with applicable laws and procedural rules. *Wheeler v. Green*, 157 S.W.3d 439, 444 (Tex. 2005). Bare assertions of error, without citations to authority, waive error. *Liberty Mut. Ins. v. Griesing*, 150 S.W.3d 640, 648 (Tex. App.—Austin 2004, pet. dism'd w.o.j.). An appellate court has discretion to conclude that issues are waived due to inadequate briefing and is not required to allow the appellant an opportunity to amend an inadequate brief. *See Fredonia State Bank v. General Am. Life Ins.*, 881 S.W.2d 279, 284 (Tex. 1994). Appellate courts will not make appellants' arguments for them. *See Robertson v. Southwestern Bell Yellow Pages, Inc.*, 190 S.W.3d 899, 903 (Tex. App.—Dallas 2006, no pet.).

### Relevant Family Code Provisions

Under Section 156.101 of the Texas Family Code, the trial court may modify the conservatorship of a child only if the modification is in the child's best interest, and the circumstances of the child, a conservator, or other party affected by the order have materially and substantially changed since the date of rendition of the order. *See* Tex. Fam. Code § 156.101. It

4

is the movant's burden to present evidence in support of the changed circumstances. *Nellis v. Haynie*, 596 S.W.3d 920, 929 (Tex. App.—Houston [1st Dist.] 2020, no pet.).

The Family Code provides that an order of child support may be modified if it is shown that "the circumstances of the child or a person affected by the order have materially and substantially changed" or "it has been three years since the order was rendered or last modified and the monthly amount of the child support award under the order differs by either 20 percent or $100 from the amount that would be awarded in accordance with the child support guidelines." Tex. Fam. Code § 156.401(a). The party moving for modification of child support has the burden of proving that the requisite change in circumstances has occurred. *In re Knott*, 118 S.W.3d 899, 902 (Tex. App.—Texarkana 2003, no pet.).

**Standard of Review**

We review the trial court's decisions whether to modify conservatorship and child support for an abuse of discretion. *Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex. 1990) (child support); *In re J.R.D.*, 169 S.W.3d 740, 742–43 (Tex. App.—Austin 2005, pet. denied) (conservatorship, possession, and child support). A trial court abuses its discretion when its decision is arbitrary, unreasonable, or without reference to any guiding rules or principles. *Worford*, 801 S.W.2d at 109. We must uphold the trial court's decision if it is supported by any probative evidence. *Echols v. Olivarez*, 85 S.W.3d 475, 477 (Tex. App.—Austin 2002, no pet.). Under the abuse-of-discretion standard, legal and factual insufficiency are relevant factors in assessing whether the trial court abused its discretion. *In re J.R.D.*, 169 S.W.3d at 742–43.

**DISCUSSION**

**<u>Assignment of Visiting Judge</u>**

In his first issue, Mustafa contends that the final order in this case is void because Judge Stansbury's assignment was invalid. Although Mustafa organizes his first issue into eight sub-issues, we will reorganize and address them based on the three legal theories that he raises.

*Section 74.053 objection*

In his first sub-issue, Mustafa contends that the trial court failed to honor his July 31, 2023 objection to Judge Stansbury pursuant to Section 74.053 of the Texas Government Code. Section 74.053 states in relevant part:

(a) When a judge is assigned to a trial court under this chapter:

    (1) the order of assignment must state whether the judge is an active, former, retired, or senior judge; and

    (2) the presiding judge shall, if it is reasonable and practicable and if time permits, give notice of the assignment to each attorney representing a party to the case that is to be heard in whole or part by the assigned judge.

(b) If a party to a civil case files a timely objection to the assignment, the judge shall not hear the case. Except as provided by Subsection (d), each party to the case is only entitled to one objection under this section for that case.

(c) An objection under this section must be filed not later than the seventh day after the date the party receives actual notice of the assignment or before the date the first hearing or trial, including pretrial hearings, commences, whichever date occurs earlier. The presiding judge may extend the time to file an objection under this section on written motion by a party who demonstrates good cause.

Tex. Gov't Code § 74.053(a)-(c).

While sub-section (b) allows for a party to timely object to an assigned judge, sub-section (c) limits the party's ability to object to the earlier of seven days after actual notice or

6

before the first pretrial hearing.  *See id.* § 74.053(b)-(c).  Mustafa contends that he did not receive actual notice until July 26, 2023.  Specifically, he relies on the assignment letter dated July 26, 2023, and contends that Judge Stansbury was not previously assigned to the case.  Thus, Mustafa relies on the date of that July 2023 letter as the date he received actual notice.  However, the trial court's findings of fact include a finding that "[o]n December 2, 2021, Honorable Tom Stansbury was assigned to hear all matters in this cause."  Further, Mustafa referred to Judge Stansbury as "visiting Judge Tom Stansbury" in his Notice of Appeal filed on January 12, 2023—over six months prior to the date Mustafa contends he received notice of Judge Stansbury's assignment as visiting judge.  Additionally, his objection is also untimely because he made it after the final order had been signed, and thus, was made well after the first pretrial hearing.  *See id.* § 74.053(c); *In re Canales*, 52 S.W.3d 698, 704 (Tex. 2001) (orig. proceeding) (holding that Section 74.053 "does not confer a new opportunity to object when a visiting judge who has already heard matters in the case is reassigned by a new assignment order").  Thus, because his objection was untimely, Mustafa had no right to remove Judge Stansbury under Section 74.053.  *See In re Hourani*, 20 S.W.3d 819, 823–24 (Tex. App.—Houston [14th Dist.] 2000, orig. proceeding) (applying requirement that objection be made prior to first pretrial hearing to parties who did not have actual notice until after objection had become untimely).

Further, Section 74.053(b) limits a party to one objection under that section during the case.  Tex. Gov't Code § 74.053(a).  Even if Mustafa had made a timely objection to Judge Stansbury, he had already objected to the first visiting judge.  Mustafa does not contend that the exception to this limitation in subsection (d) applies in this case, and we will not make the argument for him.  *See* Tex. R. App. P. 38.1(i) (requiring that brief "contain a clear and concise argument for

7

the contentions made, with appropriate citations to authorities and to the record"); *Robertson*, 190 S.W.3d at 903. We overrule this sub-issue.

*Invalid order of assignment*

In his second sub-issue, Mustafa contends that Judge Stansbury presided over the case without a valid order of assignment, which Mustafa contends violated the procedure established by Section 74.056 of the Texas Government Code and his due-process rights. *See* Tex. Gov't Code § 74.056(a) (providing that "[a] presiding judge from time to time shall assign the judges of the administrative region to hold special or regular terms of court in any county of the administrative region to try cases and dispose of accumulated business"). Specifically, Mustafa contends that Judge Stansbury was not assigned as the judge to the case until July 26, 2023—after the final order was signed—because there is not an earlier assignment letter included in the record. However, Mustafa also contends in his reply brief that "Judge Stansbury's tenure as an active senior judge expired December 2022, disqualifying him from further actions in Mustafa's case." As noted above, the trial court's findings of fact and conclusions of law found that Judge Stansbury had been assigned to the case on December 2, 2021.

Mustafa failed to preserve either his procedural complaint or his due process complaint regarding Judge Stansbury's assignment. To preserve a complaint for appellate review, the complaining party must present the complaint to the trial court by timely request, objection, or motion that states "the grounds for the ruling that the complaining party sought from the trial court with sufficient specificity to make the trial court aware of the complaint" and obtain a ruling by the trial court or object if the trial court refuses to rule. Tex. R. App. P. 33.1(a). This includes complaints of procedural irregularities in the assignment of a visiting judge. *Drake v. Willing*,

8

No. 03-14-00665-CV, 2015 WL 5515903, at *3 (Tex. App.—Austin Sept. 16, 2015, no pet.) (mem. op.) (quoting *Wilson v. State*, 977 S.W.2d 379, 380 (Tex. Crim. App. 1998) (holding that appellant must make pretrial objection to procedural irregularity in assignment of former judge and may not object for first time on appeal)). Here, Mustafa did not object in the trial court to any procedural issue with Judge Stansbury's December 2021 assignment, but rather, raised only a general objection to Judge Stansbury's July 2023 reassignment.

Mustafa's due-process issue is also waived as he did not raise it below. Constitutional complaints, such as due process violations, are generally waived on appeal if not properly raised in the trial court. *In re L.M.I.*, 119 S.W.3d 707, 711 (Tex. 2003); *see also In re Morrison*, No. 12-22-00001-CV, 2022 WL 598681, at *6 (Tex. App.—Tyler Feb. 28, 2022, orig. proceeding) (mem. op.) (holding that appellant's failure to timely object waived his due-process issue that contended that visiting judge's assignment had expired). We overrule this sub-issue.

*Unavailability of presiding judge*

In his third sub-issue, Mustafa contends that Judge Stansbury's assignment was invalid because the record does not include any showing that the "regular" judge was "unavailable." In support of his contention that an "unavailability" requirement exists for the assignment of a visiting judge, Mustafa cites four cases. Two of his cited cases do not exist. The other two do not include the quoted text that he attributes to them and do not include a holding that a "regular" judge must be unavailable. *See In re Canales*, 52 S.W.3d at 700 (reviewing the timeliness of party's objection to visiting judge); *In re B.F.B.*, 241 S.W.3d 643, 646 (Tex. App.—Texarkana 2007, no pet.) (rejecting contention that procedure for assigning visiting judges is not

9

required if sitting judge becomes unavailable). We have not found any authority supporting Mustafa's purported "unavailability" requirement. We overrule this sub-issue.

Having overruled his three sub-issues, we overrule Mustafa's first issue.

## Evidentiary issues

In his second issue, Mustafa contends that the trial court erred when it allowed the testimony of Mustafa's private investigator without a valid subpoena. Mustafa briefed the merits of this issue as four sub-issues. Specifically, he contends that: (1) because there was no subpoena issued for the private investigator, his testimony constituted a "trial by ambush"; (2) the private investigator's testimony went "beyond permissible 'rebuttal' evidence" and included privileged communications; (3) the trial court used the improper testimony to impose supervised visitation without evidence of his being a serious danger to his child; and (4) the trial court failed to sanction opposing counsel for falsely representing that the witness had been subpoenaed.

*Witness testimony without a subpoena*

Mustafa contends that there was no subpoena issued for his private investigator, Mike Adams, and that because of the lack of a subpoena, the investigator's testimony constituted a "trial by ambush." In his reply brief, Mustafa clarifies that he contends that the witness's testimony should have been excluded under Texas Rule of Civil Procedure 193.6 because the witness was not timely identified. He also clarifies in his reply brief that he contends that "the procedural failure to serve a subpoena to Adams denied him the opportunity to prepare for cross-examination" and thus, as he contends violated his due process rights.

At trial, prior to Adams testifying, Mustafa objected based on Rule 193.6 and argued that Adams' presence as a witness was a surprise because he had not received a copy of the

10

subpoena for Adams and because Asim had amended her witness list to add Adams only seven days prior. Asim's attorney explained that the witness-list amendment was made only seven days prior because that was when he was added to the case and determined that the witness was necessary. Asim's attorney also argued that there was no surprise because the witness was hired by Mustafa as a private investigator and that the letters from Adams to Asim and her attorney that would be offered as evidence through Adams had been "long since provided" to Mustafa. He also argued that the witness was in part an impeachment witness because while Mustafa had represented in his interrogatories that he did not hire a private investigator related to this case, Adams had been hired by Mustafa in 2020, which was after the conclusion of the 2017 modification case and prior to the filing of this one. Mustafa maintained that Adams was hired for a different case and not for this one. The trial court allowed Adams to testify and told Mustafa that he would allow him to make specific objections to Adams' testimony if he wished to do so.

Rule 193.5 of the Rules of Civil Procedure provides that a party has a duty to amend or supplement identification of trial witnesses and that the amendment "must be made reasonably promptly after the party discovers the necessity for such a response." Tex. R. Civ. Proc. 193.5(a). Rule 193.5 also creates a presumption that a "response made less than 30 days before trial was not made reasonably promptly." *Id.* R. 193.5(b). When an amendment is made untimely, Rule 193.6(a) provides that:

> A party who fails to make, amend, or supplement a discovery response, including a required disclosure, in a timely manner may not introduce in evidence the material or information that was not timely disclosed, or offer the testimony of a witness (other than a named party) who was not timely identified, unless the court finds that:
>
> (1) there was good cause for the failure to timely make, amend, or supplement the discovery response; or

11

(2) the failure to timely make, amend, or supplement the discovery response will not unfairly surprise or unfairly prejudice the other parties.

Regarding this issue, the trial court found that:

16. On March 7, 2022, Shakeel Mustafa signed answers to interrogatories wherein he signed "I declare under the penalty of perjury that the foregoing is true and correct." Wherein Interrogatory number 1 propounded to Shakeel Mustafa stated: "If you and/or anyone on your behalf has employed or used any private investigator in relation to this proceeding, state: a. the identity and location of the investigator, b. the dates of hiring and surveillance, c. whether any written report has been compiled by the investigator, and d. the total fees charged." Shakeel Mustafa's response to interrogatory number one was "None."

17. When Shakeel Mustafa answered "None" in his answer to interrogatory number one on March 7, 2022, he was not telling the truth.

18. Mike Adams was a Private Investigator hired by Shakeel Mustafa to do work in this case.

19. Mike Adams, represented to this court by Respondent's counsel as having been served with a last-minute trial subpoena, appeared before this court.

20. Counsel for Pakiza Asim's failure to file the trial subpoena for Mike Adams, while unnecessary, was inadvertent and unintentional.

21. Shakeel Mustafa knew or should have known that Mike Adams would be called to testify.

22. Mike Adams sent letters and correspondence to Pakiza Asim on behalf of Shakeel Mustafa.

23. On March 1, 2021, Mike Adams sent a letter to Pakiza Asim as a Private Investigator on behalf of Shakeel Mustafa which was after this current modification was filed.

Further, the trial court determined that:

5. It is not unfair surprise to Shakeel Mustafa for Mike Adams to testify because Shakeel Mustafa hired Mike Adams, had Mike Adams contact Pakiza Asim, and then did not answer his interrogatories truthfully.

12

We review a trial court's evidentiary rulings for an abuse of discretion. *Hlavinka v. HSC Pipeline P'ship, LLC*, 650 S.W.3d 483, 496 (Tex. 2022). A trial court abuses its discretion when its "ruling is arbitrary and unreasonable, made without regard for guiding legal principles or supporting evidence." *In re State Farm Mut. Auto. Ins.*, 629 S.W.3d 866, 872 (Tex. 2021) (orig. proceeding).

A trial court may allow an untimely disclosed witness to testify if it would not unfairly surprise or unfairly prejudice the other party. Tex. R. Civ. P. 193.6(a)(2). It is not an abuse of discretion for a trial court to allow an untimely disclosed witness to testify when it believes that the other party was already aware of the witness's existence. *Jackson v. Takara*, 675 S.W.3d 1, 6 (Tex. 2023). Here, the witness is a private investigator hired by Mustafa who sent letters to Asim during the pendency of this case. Further, the trial court found that Mustafa had lied in responding to discovery requests when he represented that he had not hired a private investigator for matters related to this case. We cannot conclude that it was an abuse of discretion for the trial court to determine that Mustafa was not unfairly surprised or unfairly prejudiced by Asim calling Mustafa's private investigator when Mustafa was already aware of the investigator's existence and connection to related matters and was aware that Asim was interested in knowing the existence of any investigators he had hired. We overrule this sub-issue.

*Testimony outside of permissible scope*

In his second sub-issue, Mustafa contends that the private investigator's testimony went "beyond permissible 'rebuttal' evidence" and included privileged communications. Mustafa has not preserved this issue for appellate review. *See* Tex. R. App. P. 33.1(a). In the trial court, Mustafa objected to Adams testifying as a witness based on unfair surprise but did not object to

13

any of Adams' testimony as being outside of the scope of rebuttal evidence or including privileged communications. He also did not make any argument to the trial court that the testimony had to be limited to rebuttal or impeachment testimony. Thus, we overrule this sub-issue.

*Imposition of supervised visitation without finding of "endangerment"*

Mustafa next complains that the purportedly improper testimony of his private investigator was impermissibly relied on by the trial court to "impos[e] supervised visitation absent any evidence that unsupervised access would seriously endanger the child." We understand this sub-issue to be based on a misunderstanding of the trial court's findings and conclusions in this case. Specifically, the trial court found that a previous court had ordered that Mustafa's possession of his children be professionally supervised and that there was no material and substantial change of circumstances to justify modification of the previous possession and access order. Thus, the trial court continued the terms from the prior visitation order. Further, Mustafa does not challenge the trial court's determination that he did not meet his burden to modify the possession order. We overrule this sub-issue.

*Trial court not sanctioning opposing counsel*

In his fourth sub-issue, Mustafa contends that the trial court erred by failing to sanction Asim's trial counsel for what Mustafa characterizes as "calculated falsehoods" regarding the existence of a subpoena. Mustafa has not preserved this sub-issue. *See* Tex. R. App. P. 33.1(a). Specifically, he has not identified anywhere in the record, and we have not found any motion to or request of the trial court for sanctions regarding the subpoena issue. Although Mustafa did object both during the trial and in his motion for new trial to Adams' testifying absent any evidence of the subpoena being filed with the trial court, the objection was in the context of notice and surprise

14

and did not request sanctions. We overrule this sub-issue. *See id.*; *cf. Valdez v. Valdez*, 930 S.W.2d 725, 728 (Tex. App.—Houston [1st Dist.] 1996, no writ) (holding that attorney waived appellate issue regarding trial court's sanction order by failing to raise complaint in trial court).

Having overruled all four of his sub-issues, we overrule Mustafa's second issue.

## Findings of Fact

Through multiple sub-issues included in his third and fourth issues, Mustafa challenges the trial court's findings of fact. We have grouped and reorganized the sub-issues into five categories. Specifically, Mustafa contends: (1) that Asim waived her ability to submit proposed findings; (2) that the trial court erred by "rubber stamping" Asim's proposed findings and conclusions and failed to independently review the record; (3) that the trial court's findings include false statements, which we interpret as legal and factual sufficiency challenges; (4) that the trial court omitted statutorily necessary findings; and (5) that the trial court abused its discretion when it denied his request to modify child support.

*Timeliness of proposed findings*

Mustafa contends that because Asim did not request findings of fact within twenty days of the judgment that she waived her ability to file proposed findings. He relies on Texas Rule of Civil Procedure 296's requirement that a party requesting findings of fact and conclusions of law must do so within twenty days after the judgment is signed. Rule 296 provides:

> In any case tried in the district or county court without a jury, any party may request the court to state in writing its findings of fact and conclusions of law. Such request shall be entitled "Request for Findings of Fact and Conclusions of Law" and shall be filed within twenty days after judgment is signed with the clerk of the court, who shall immediately call such request to the attention of the judge who tried the case.

15

> The party making the request shall serve it on all other parties in accordance with Rule 21a.

Tex. R. Civ. P. 296. Mustafa provides no authority that supports his purported extension of the plain language of the rule. Rather, he cites two cases that do not provide support. The first, *Sears, Roebuck & Co. v. Marquez*, 628 S.W.2d 772, 773 (Tex. 1982), does not contain any mention of proposed findings or any other relevant legal analysis. The second case on which Mustafa relies is *Vickery v. Commission for Lawyer Discipline*, 5 S.W.3d 241, 253 (Tex. App.—Houston [14th Dist.] 1999, pet. denied). Contrary to his contention, this case does not support Mustafa's interpretation of Rule 296 either. However, it does explain the standard process for the drafting of findings of fact and conclusions of law.

> After judgment is rendered in a bench trial, either party may request findings of fact and conclusions of law. *See* Tex. R. Civ. P. 296. However, because findings of fact can provide a basis for overcoming the presumption of validity and demonstrating error on appeal, they are normally requested by the losing party. When this occurs, the trial court, as a matter of practice, usually invites the prevailing party to prepare proposed findings and conclusions based upon its rulings. *See Grossnickle v. Grossnickle*, 935 S.W.2d 830, 837 n.1 (Tex. App.—Texarkana 1996, writ denied). Thus, while the appellant will often make a general request for findings of fact and conclusions of law under Rule 296, the request is global in nature; it is the appellee who drafts a detailed proposal "requesting" a finding on specific elements necessary to support the court's judgment.

*Id.* The process described in *Vickery* is the process that occurred here. Mustafa requested findings and conclusions. Then the prevailing party, Asim, provided proposed findings and conclusions, which the trial court adopted. Absent any supporting authority, we do not adopt Mustafa's reading of Rule 296. We overrule this sub-issue.

*Adoption of proposed findings*

Mustafa contends that the trial court erred when it adopted Asim's proposed findings. Specifically, he contends that a trial court has an "affirmative duty to independently evaluate proposed findings" to ensure their accuracy and that trial courts are prohibited from "rubber-stamping" proposed findings. The only case that Mustafa provides in support of his purported rule is *Willms v. Americas Tire Co.*, 190 S.W.3d 796, 801 (Tex. App.—Dallas 2006, pet. denied). Notably, that case does not include any of the quotations that Mustafa attributes to it and does not stand for the proposition that Mustafa claims it does. *See id.* at 802–03 (holding that appellants were not harmed by trial court not entering findings of fact or conclusions of law regarding its vexatious litigant determination). The Texas Rules of Civil Procedure do require a trial court to state in writing its findings of fact and conclusions of law after a bench trial when they are timely requested, *see* Tex. R. Civ. P. 296, 297. Mustafa requested, and the trial court entered, findings and conclusions. However, "the Texas Rules of Civil Procedure do not prohibit the trial court from adopting a party's proposed findings." *Warriner v. Warriner*, 394 S.W.3d 240, 246 (Tex. App.—El Paso 2012, no pet.) (citing Tex. R. Civ. P. 296).

Thus, to the extent Mustafa is contending that the trial court's verbatim adoption of Asim's proposed findings was inherently erroneous, we do not find any error. *See id.* However, in support of this sub-issue, Mustafa identifies specific findings of fact that he contends are erroneous as examples of the trial court's "rubber-stamping." We construe these contentions of "fraudulent findings" as challenges to the legal and factual sufficiency of the evidence supporting the specifically challenged findings and address them in our sufficiency analysis below. *See BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002) (noting that "the appellant

17

may challenge the fact findings on legal and factual sufficiency grounds"); *Warriner*, 394 S.W.3d at 246–52 (analyzing sufficiency of evidence of factual findings in divorce case).

*Legal and factual sufficiency of trial court findings*

Under the abuse-of-discretion standard, legal and factual sufficiency of the evidence are not independent grounds of error but are factors in assessing whether the trial court abused its discretion. *In re D.S.*, 76 S.W.3d 512, 516 (Tex. App.—Houston [14th Dist.] 2002, no pet.) (citing *Beaumont Bank, N.A. v. Buller*, 806 S.W.2d 223, 226 (Tex. 1991)). Evidence is legally sufficient if it would enable reasonable and fair-minded people to reach the finding under review. *See City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005). We credit favorable evidence if a reasonable factfinder could do so and disregard contrary evidence unless a reasonable factfinder could not. *Id.* When reviewing factual sufficiency to support a finding, we will set aside the finding only if, after considering and weighing all the evidence in the record pertinent to that finding, we determine that the credible evidence supporting the finding is so contrary to the overwhelming weight of all the evidence that the finding should be set aside. *See Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986). The factfinder is the sole judge of the credibility of witnesses and the weight to be given to their testimony, and we must not merely substitute our judgment for that of the trier of fact. *See Golden Eagle Archery, Inc. v. Jackson*, 116 S.W.3d 757, 761 (Tex. 2003).

Mustafa challenges the trial court's findings that:

6. On December 4, 2020, Pakiza Asim filed her Answer and Motion for Temporary Orders.

7. The December 4, 2020 Answer filed by Pakiza Asim requests that Shakeel Mustafa "be ordered to pay reasonable and necessary temporary, trial, and appellate attorney fees, expenses, and costs."

18

His challenge to findings number 6 and 7 is based on his contention that Asim never filed an Answer and Motion for Temporary Orders at all, especially one that included a request for appellate attorney fees. He relies on the fact that there is no docket entry dated December 4, 2020, or any docket entry for Asim's answer and motion on the trial court's docket sheet. However, the clerk's record includes a pleading filed by Asim on December 4, 2020 titled "Respondent's Original Answer," in which she included a section titled "Attorney Fees" and asserted that "Shakeel Mustafa should be ordered to pay reasonable and necessary temporary, trial, and appellate attorney's fees" and that she "prays that all relief be denied to [Mustafa] . . . and that [Asim] be awarded her costs of court and attorney's fees, together with such other and further relief to which [Asim] may be justly entitled." We conclude that the trial court's finding that Asim filed an answer that requested temporary, trial, and appellate attorney fees, expenses, and costs is supported by legally and factually sufficient evidence.

Mustafa challenges the trial court's finding of fact number 12, which states, "On December 2, 2021, Honorable Tom Stansbury was assigned to hear all matters in this cause." Mustafa contends that Judge Stansbury was not assigned to the case until July 26, 2023, the date of the only assignment letter in the record. The Texas Government Code gives the presiding judge of each administrative judicial region authority to appoint judges to hear cases as necessary. *See* Tex. Gov't Code §§ 74.052–.0551. However, these statutes do not require the trial court to include the order of assignment in the record. *In re C.H.C.*, 396 S.W.3d 33, 41 (Tex. App.—Dallas 2013, no pet.). The statutes also do not include a requirement that the administrative judicial region's presiding judge preserve a copy of the order. *Id.* Judge Stansbury signed an order on Mustafa's motion to substitute counsel on December 2, 2021. Mustafa did not object to Judge Stansbury signing that order or any order in the case, including the final judgment, based on an invalid

19

assignment. Mustafa did not object to Judge Stansbury's assignment until July 31, 2023. Further, the copy of the later assignment order was included in the record along with Mustafa's objection. We cannot conclude on this record that Mustafa has established that he is entitled to any relief based on any sufficiency of the evidence issue related to Judge Stansbury's finding regarding when his assignment to the case began.

Mustafa challenges the trial court's finding number 20, which states, "Counsel for Pakiza Asim's failure to file the trial subpoena for Mike Adams, while unnecessary, was inadvertent and unintentional." Mustafa contends that this is a false statement, based on his contention that no subpoena existed for Adams. Mustafa relies on the absence of any subpoena for Adams' testimony or production of documents being filed with the court to support his contention that it does not exist. However, Asim's trial counsel represented to the trial court that they had subpoenaed Adams both for documents and for his trial testimony. Adams was present at the hearing with the documents that Asim's counsel claimed to have requested via subpoena. Adams never indicated that he was not there as a result of a subpoena. We cannot conclude that Mustafa has shown that evidence of the subpoena for Adams is even necessary, let alone that he is entitled to any relief based on any sufficiency of the evidence issue regarding this finding.

Mustafa also challenges an additional finding of fact that appeared in the trial court's original findings of fact and conclusions of law but was not included in the amended findings of fact and conclusions of law. Specifically, the trial court originally adopted the finding that "Mike Adams appeared before this court under last minute trial subpoena." Mustafa objected to that finding based on no record of service of the subpoena within the record. In the trial court's amended findings, that finding was omitted and instead the trial court found that, "Mike Adams, represented to this court by Respondent's counsel as having been served with a last-minute trial

20

subpoena, appeared before this court." Mustafa does not challenge the amended finding. To the extent Mustafa is contending that this did not adequately address his objection to the original finding, we cannot conclude that Mustafa has shown that he is entitled to any relief based on any sufficiency of the evidence issue regarding the trial court's original finding that Adams testified under a last-minute subpoena. As noted above, Asim's trial counsel represented to the trial court that they had subpoenaed Adams, and Adams was present, testified, and did not contradict the assertion that he had been subpoenaed.

Mustafa also challenges additional findings through his reply brief that he did not raise in his original appellate brief. Those issues are waived. *See Howell v. Texas Workers' Comp. Comm'n*, 143 S.W.3d 416, 439 (Tex. App.—Austin 2004, pet. denied) (holding that "[a] party waives its challenges to the findings of fact and conclusions of law if it fails to raise them in its original appellate brief").

In summary, Mustafa has not shown that any of the challenged findings of fact are unsupported by legally or factually sufficient evidence. We cannot conclude on this record that the trial court abused its discretion. *See In re D.S.*, 76 S.W.3d at 516. We overrule the portion of his third and fourth issues that challenge the trial court's specific findings of fact.

*Omitted findings*

Mustafa contends that the trial court erred by not including findings: regarding currency conversion for his foreign income; that his child would be endangered by a standard possession order, which he contends is statutorily required; and in support of the child-support amount, which he contends is required under Section 154.130 of the Texas Family Code.

21

We understand Mustafa's contention regarding an alleged missing currency conversion to challenge the trial court's findings regarding whether Mustafa met his burden to show that there had been a change of circumstance to his income for purposes of calculating child support. Specifically, the trial court found that:

30. Mr. Mustafa presented no credible evidence of his income nor his net resources.

31. Mr. Mustafa presented noncredible information about his income in foreign currency and the US dollar equivalent, but that income did nothing to explain his ability to hire and pay for five different lawyers and five different retainer fees in this case.

Mustafa complains that "the trial court's adopted findings do not reveal whether the court appropriately considered currency conversion rates when evaluating [his] foreign income." Mustafa contends that Texas law requires a trial court to include currency conversions in its findings of fact. He relies on *Lide v. Lide*, 116 S.W.3d 147, 150 (Tex. App.—El Paso 2003, no pet.) and Texas Family Code Subsection 154.125(a) in support. However, neither that case nor statute mention foreign-currency conversion or contain any of the quotations that Mustafa attributes to them. In addition to providing no support for the purported requirement, and this Court being unable to find any, Mustafa also fails to provide what the proper currency-conversion finding would have been and how it is relevant to the trial court's finding that his evidence of his income was not credible.

Mustafa also contends that the trial court was required to make certain findings as a result of imposing supervised visitation and calculating child support. However, the trial court did not order supervised visitation or set the child support amount. Rather, it declined to change those orders made by the previous court in the 2017 modification case because it found that

Mustafa did not meet his burden to show changed circumstances to warrant modification. *See Onkst v. Onkst*, No. 03-15-00636-CV, 2017 WL 2628245, at *4 (Tex. App.—Austin June 16, 2017, no pet.) (mem. op.) (citing *Rumscheidt v. Rumscheidt*, 362 S.W.3d 661, 664 (Tex. App.—Houston [14th Dist.] 2011, no pet.)) (holding that "trial court is not required to make findings under section 154.130 [of the Texas Family Code] when denying a motion to modify").

We overrule these sub-issues.

*Child Support*

Mustafa contends that he "presented undisputed evidence his sole income was 175,000 Rupees per month in Pakistan, equating to $865 USD." We understand this to be a challenge to the trial court's determination that he failed to show the requisite change in income to warrant modification of the previous child-support order.

In addition to finding that Mustafa presented no credible evidence of his income or net resources, the trial court concluded that:

8. There is no material and substantial change of the child or a person affected by the previous order since the rendition of the previous order to justify the modification to child support requested by Shakeel Mustafa.

9. Though three years have elapsed since the last order was rendered there is insufficient evidence to prove by a preponderance of the evidence that the child support award under the previous order differs by either 20 percent or $100 from the amount that would be awarded in accordance with the child support guidelines.

As the party who sought modification of the child-support order, Mustafa had the burden of proving that the previous child-support order should be modified. *See* Tex. Fam. Code § 156.401(a); *In re Knott*, 118 S.W.3d at 902. He also had the burden of providing both historical

23

and current evidence of his financial circumstances. *See Melton v. Toomey*, 350 S.W.3d 235, 238–39 (Tex. App.—San Antonio 2011, no pet.).

Mustafa does not specify under which two statutory circumstances for child support modification provided by Section 156.401 of the Family Code he purports to have presented sufficient evidence to meet his burden. He contends that he "presented undisputed evidence his sole income was 175,000 Rupees per month in Pakistan, equating to $865 USD." Mustafa refers us to a section of the trial transcript in which his trial counsel asked him about his monthly income, and there Mustafa testified that he works as a network engineer and makes "1,000 per month," which he opined "is about 175,000 Rupees in Pakistan per month." When asked by his trial counsel if that amount of Rupees would convert to $865, Mustafa agreed. No other evidence of his monthly pay appears in the record. Mustafa also testified that he had a master's degree but that he was not "purposefully underemployed."

The trial court made a credibility determination regarding Mustafa's testimonial evidence of his income and the conversion rate. The trial court found it not credible. The factfinder is the sole judge of the credibility of witnesses and the weight to be given to their testimony, and we must not merely substitute our judgment for that of the trier of fact. *See Golden Eagle Archery*, 116 S.W.3d at 761. Mustafa does not direct us to any additional evidence within the record, and we have found none that supports his statement regarding his monthly pay or his inconsistent statements on the conversion rate. On this record we cannot conclude that the trial court abused its discretion in denying Mustafa's request to modify child support in this case. We overrule this sub-issue.

24

**Attorney's fees**

Within his fourth issue, Mustafa contends that the trial court abused its discretion by awarding Asim $50,000 for appellate attorney fees because, as he contends, there is "no evidence of reasonableness and necessity" of the appellate attorney's fees.[3]

The trial court ordered that Asim be awarded $50,000 in appellate attorney's fees. Its order explains that the $50,000 comprises: $30,000 for the appeal; $5,000 for oral argument in the court of appeals; $10,000 for a petition for review in the Texas Supreme Court; and $5,000 for oral argument in the Texas Supreme Court.

Mustafa contends that the lodestar method used for calculating trial attorney fees applies here. *See Rohrmoos Venture v. UTSW DVA Healthcare, LLP*, 578 S.W.3d 469, 496–98 (Tex. 2019). However, the *Rohrmoos* lodestar method does not apply to appellate attorney fees. *Yowell v. Granite Operating Co.*, 620 S.W.3d 335, 355 (Tex. 2020). This is because unlike trial attorney fees, the calculation and award of appellate attorney fees is for fees that have not yet occurred but rather, are based on a hypothetical appeal. *Id.* When reviewing whether an award of appellate attorney's fees is supported by legally sufficient evidence, we must determine whether the party seeking attorney's fees met the burden of proof by providing "opinion testimony about the services it reasonably believes will be necessary to defend the appeal and a reasonable hourly rate for those services." *Id.*

Here, during the trial, Asim's appellate attorney testified as an expert witness on attorney's fees. He stated that he had been representing Asim as her appellate attorney since 2017. He testified to his hourly rate and to the hourly rates of his intern, paralegal, experienced associate

---

[3] Mustafa reasserts his contention that Asim never requested attorney's fees. However, we have already disposed of that contention in his challenges to the trial court's findings of fact.

attorney, and new associate attorney. He testified that these hourly rates were reasonable and necessary. He also testified that Asim was asking for $50,000 total and explained that it was based on $30,000 for the appeal, $5,000 for oral argument in the court of appeals, $10,000 for a petition for review in the Texas Supreme Court, and $5,000 for oral argument in the Texas Supreme Court. However, he provided no testimony "about the services [he] reasonably believe[d would] be necessary to defend the appeal." *See Yowell.*, 620 S.W.3d at 355. Both this Court and our sister court have reversed awards of attorney's fees that were based on this same type of attorney testimony that states the estimated amounts for handling each phase of an appeal without identifying the services the attorney reasonably believes will be necessary. *See Hizar v. Heflin*, 672 S.W.3d 774, 803–04 (Tex. App.—Dallas 2023, pet. denied); *Jimmie Luecke Child. P'ship, Ltd. v. Droemer*, No. 03-20-00096-CV, 2022 WL 243162, at *7–8 (Tex. App.—Austin Jan. 27, 2022, pet. denied) (mem. op.).

Thus, we conclude that the $50,000 appellate attorney fees awarded to Asim for this appeal are based on legally insufficient evidence under *Yowell*. *See* 620 S.W.3d at 355. We sustain Mustafa's sub-issue regarding the award of appellate attorney's fees. We reverse the $50,000 in appellate attorney fees awarded for this appeal and remand to the trial court for redetermination of those appellate fees. *See Hizar*, 672 S.W.3d at 803–04 (remanding issue of appellate attorney's fees to trial court after reversing for insufficient evidence).

In his reply brief, Mustafa contends that the awarded trial attorney's fees were excessive and not justified by the record. Mustafa did not raise this issue regarding trial attorney's fees in his opening brief. Because this new issue was raised only in his reply brief, it is waived. *See Howell*, 143 S.W.3d at 439.

**Motion for New Trial**

In a sub-issue of his fourth issue, Mustafa contends that the trial court erred by denying his motion for new trial. Specifically, in the issues presented section of his brief, he contends that the trial court erred "in denying the Appellant's Motion for a New Trial dated November 14, 2022, given the substantial and distressing evidence presented highlighting the physical and emotional abuse endured by the Appellant's elder son at the hands of his stepfather, as detailed in [the Clerk's Record]." His reference to the Clerk's Record is to three emails from his private investigator discussing concerns about his adult son that were attached to his Motion for New Trial.

However, Mustafa only lists this issue in his issues presented section and provides no legal argument or authorities in support. *See* Tex. R. App. P. 38.1(i) (appellant's brief "must contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record"). Bare assertions of error, without citations to authority, waive error. *Liberty Mut. Ins.*, 150 S.W.3d at 648. Although we are to construe the rules of appellate procedure liberally, *see Republic Underwriters Ins.*, 150 S.W.3d at 427, Mustafa's briefing regarding this issue is so inadequate that it does not comply with what Rule 38.1(i) requires, *see Robertson*, 190 S.W.3d at 903.

In his reply brief, Mustafa attempts to raise a new issue challenging the denial of his motion for new trial. Specifically, he contends that "[t]he trial court's refusal to grant a new trial despite significant procedural irregularities constitutes an abuse of discretion." He identifies the "procedural irregularities" as "phantom filings and the failure to provide adequate notice of certain actions taken by the appellee." Because this new issue is raised only in his reply brief, it is waived. *See Howell*, 143 S.W.3d at 439.

27

We overrule this issue.

## CONCLUSION

Having sustained Mustafa's sub-issue regarding the award of appellate attorney's fees, we reverse the trial court's award of $50,000 in appellate attorney fees for this appeal and remand that issue to the trial court for redetermination of those appellate fees. Having overruled all of Mustafa's other issues, we affirm the remainder of the trial court's judgment.

_____

Gisela D. Triana, Justice

Before Justices Baker, Triana, and Kelly

Affirmed in Part, Reversed and Remanded in Part

Filed:   December 20, 2024